UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FRANCISCO MARTINEZ, JR.,

    Defendant.
    _____/

File No. 1:12-cr-132

HON. JANET T. NEFF

## **OPINION**

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by Defendant Francisco Martinez, Jr. (ECF No. 1768.) The Government has filed a response to the motion (ECF No. 1800), and Defendant has filed a reply (ECF No. 1816). Defendant has also filed a motion to amend his § 2255 motion (ECF No. 1827), which the Government opposes (ECF No. 1828). For the reasons herein, Defendant's motion under § 2255 and motion to amend will be denied.

### **I. Background**

#### **A. Indictment**

In February 2013, Defendant and 30 other members of a gang called the Holland Latin Kings (HLK) were charged with multiple crimes. (Third Superseding Indictment, ECF No. 68.) In July 2013, the grand jury returned a Fourth Superseding Indictment naming Defendant in Count One, participation in a racketeering conspiracy, 18 U.S.C. § 1962(d), Count Fourteen, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A)(ii), Count Fifteen, conspiracy to possess with intent to distribute 100

kilograms or more of marijuana, 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B)(vii), and Count Eighteen, felon in possession of a firearm, 18 U.S.C. § 922(g)(1).

Count One alleged a conspiracy beginning in 1993 and continuing to 2013 that involved murder, assault, arson, and the distribution of cocaine and marijuana. The indictment alleged that Defendant was the "Inca," or leader, of part of the HLK. As part of his involvement with the HLK, Defendant allegedly used or possessed firearms. On February 19, 2007, he and another HLK member possessed a HLK dues ledger along with a .38 caliber Colt Super pistol, a 9 mm Luger pistol, a .25 caliber ANC pistol, multiple boxes of ammunition, over $1,000 in currency, 29 grams of marijuana, 19 grams of cocaine base, digital scales, and plastic baggies. On July 28, 2008, Defendant possessed a .25 caliber pistol. On July 19, 2012, Defendant possessed a Remington Model 7400, 30.06 caliber, semiautomatic rifle and three marijuana plants at his home.

The indictment also alleged that Defendant was involved in violent conduct in connection with the HLK. On May 1, 2007, Defendant and other HLK members allegedly participated in a gang fight with a rival gang, throwing rocks at a home in Holland, Michigan. On July 29, 2007, Defendant allegedly assaulted a woman with a broken glass bottle after she offended HLK members. On July 26, 2009, Defendant assaulted a "suspected police cooperator."

In addition, the indictment alleged that Defendant sold drugs for the HLK. In August 2007, Defendant sold cocaine or marijuana on two different dates. In November and December 2011, he sold marijuana on three separate days.

**B. Plea**

In April 2014, Defendant signed a plea agreement accepting guilt for Counts One and Fifteen in exchange for the dismissal of Counts Fourteen and Eighteen. (Plea Agreement, ECF No. 1020.) Defendant entered his plea on April 11, 2014, at a hearing before United States Magistrate Judge Ellen S. Carmody.

## C. Initial Presentence Report

The probation officer subsequently prepared a Presentence Investigation Report (Initial PIR, ECF No. 1238), scoring Defendant with a combined adjusted offense level of 33. For a racketeering offense, the base offense level is 19 or the offense level applicable to the underlying racketeering activity. The Initial PIR looked at Defendant's participation in the racketeering conspiracy and identified eight types (called "groups") of criminal conduct. Each of these groups was scored separately. The three groups with the highest scores were Group 6 (conspiracy to assault Davon Ruff – adjusted offense level 27), Group 7 (conspiracy to assault Roberto Villareal – adjusted offense level 27), and Group 8 (conspiracy with intent to distribute and to distribute 100 kilograms or more of marijuana – adjusted offense level 30).

Regarding the assault on Ruff, the PIR alleged that members of the HLK stabbed and assaulted Ruff numerous times after Defendant ordered a "SOS" ("stab on sight") on him. The PIR used the base offense level for aggravated assault, which is 14. However, the probation officer added another 13 levels because (1) the assault "involved more than minimal planning," (2) a "dangerous weapon" was used in the assault, and (3) the victim sustained "permanent or life-threatening bodily injury." (Initial PIR, PageID.15681.)

Regarding the marijuana conspiracy, the PIR started with a base offense level of 26 and then added two levels because Defendant possessed a firearm, and another two levels because Defendant directed the use of violence.

The highest score of all the groups, 30, was used as the base offense level for Defendant's sentence. Because the highest three groups resulted in offense levels that were within 1 to 4 levels of one another, each of these three groups added an additional level to Defendant's offense level per U.S.S.G. § 3D1.4, leading to a combined adjusted offense level of 33. The probation officer also added three levels for Defendant's leadership role in the HLK, but dropped

3

two levels to account for Defendant's acceptance of responsibility, resulting in a total offense level of 34. Defendant's criminal history score was V.

### D. Objections to PIR

Defendant's attorney filed objections to the Initial PIR. Among other things, Defendant's attorney objected to the scoring of Group 6 (conspiracy to assault Davon Ruff), Group 7 (conspiracy to assault Roberto Villareal), and Group 8 (marijuana conspiracy). Defendant's attorney objected to holding Defendant responsible for the assaults on Ruff and Villareal. As to the assault on Ruff in Group 6, Defendant allegedly ordered the SOS over a year before the assault occurred. Defendant argued that the person who actually assaulted Ruff did so for personal reasons, and not because of Defendant's SOS order. Defendant also argued that the assault did not involve "minimal planning." Alternatively, Defendant argued that he should be held responsible for only a minor assault, not an aggravated one, because he did not order a specific type of assault.

As to the assault on Villareal in Group 7, Defendant contended that the PIR identified the wrong Francisco Martinez. Defendant is not the one who assaulted Villareal.

As to marijuana conspiracy, Defendant's attorney objected that there was no evidence that a firearm was used to further the marijuana conspiracy or that Defendant directed the use of violence in connection with that conspiracy.

Finally, Defendant's attorney argued that the Court should depart downward from the Guidelines because Defendant's criminal history was gang-related, and because Congress had proposed adjustments to the Guidelines.

### E. Final Presentence Report

The probation officer subsequently issued a revised PIR (Final PIR, ECF No. 1265) which removed the assault on Villareal from consideration. This dropped Defendant's adjusted offense level from 34 to 33. (*Id.*, PageID.16850.) The new PIR also reduced Defendant's criminal

history score to III. Defendant's attorney subsequently filed objections and a motion for a downward variance reiterating some of the issues raised in his previous objections. (ECF No. 1267.) In particular, Defendant's attorney objected to holding Defendant responsible for an aggravated assault on Davon Ruff.

**F. Sentence**

Judge Bell sentenced Defendant on August 20, 2014. Defendant's attorney argued some of his objections to the Court at the sentencing hearing, but did not specifically raise the issue of Defendant's possession of a firearm, which Defendant has raised in his motion before the Court. Judge Bell decided that the assault on Ruff was relevant conduct for the racketeering conspiracy, and that the assault involved life-threatening injury, but agreed that a two-level enhancement for minimal planning for this offense was not warranted. (Sentencing Tr. 7-9, ECF No. 1328.) By reducing the offense level for the assault, it no longer counted as a "unit" for scoring with Defendant's other conduct in connection with the racketeering conspiracy, *see* U.S.S.G. § 3D1.4, thereby reducing Defendant's combined adjusted offense level from 33 to 32.

Judge Bell further reduced the adjusted offense level by two points to account for expected revisions to the Guidelines by the Sentencing Commission that had not yet taken effect. (*Id.* at 15.) After these adjustments, the offense level was 30. With an offense level of 30 and a criminal history score of III, the range of sentence under the guidelines was 121 to 151 months. (*Id.* at 18.) Judge Bell departed below the guidelines to account for Defendant's confinement and conduct in jail and sentenced him to 108 months in prison.

**G. Appeal**

Defendant appealed his sentence, contending that the district court erroneously held him responsible for an aggravated assault on Davon Ruff. *See United States v. Penaloza*, 648 F.

5

App'x 508, 533-35 (6th Cir. 2016). On May 12, 2016, the Court of Appeals for the Sixth Circuit rejected Defendant's arguments and affirmed his sentence. *Id.*

### H. Motion under § 2255

Defendant now raises the following issues in his motion under § 2255:

I. Ineffective assistance of counsel: failure to object to dangerous weapon enhancement in U.S.S.G. § 2D.1.1(b)(1).

II. Ineffective assistance of counsel: failure to object to the enhancement in U.S.S.G. § 2D1.1(b)(2) for threat or use of violence.

(ECF No. 1768, PageID.22432-22433.)

The Government argues that the motion should be denied because the grounds for relief are meritless.

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it

amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

### B. Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### III. Analysis

***Ground One:*** **Ineffective Assistance of Counsel: Failure to Object to the Dangerous Weapon Enhancement**

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of

7

professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Defendant argues that his attorney should have objected to the scoring of the marijuana conspiracy, insofar as the score reflected the use of a dangerous weapon. According to Petitioner, the dangerous-weapon enhancement "was for a gun that was found in the garage in an area remote from where the drugs were found. Also, no one ever used or carried a firearm during the conspiracy." (Mot. under § 2255, ECF No. 1768, PageID.22432.)

The Final PIR applied a two-level "dangerous weapon" enhancement under U.S.S.G. § 2D1.1(b)(1) to the conspiracy to distribute marijuana. Defendant apparently contends that his attorney should have objected to this enhancement. According to Defendant,

> The enhancement the Petitioner received under § 2D1.1(b)(1) . . . had to relate to the firearm that was found at this Petitioner's house when drugs were seized. However, that firearm had no clip, was otherwise unloaded , and found in the garage, a totally different area from where the drugs were found.

(Mot. under § 2255, PageID.22444.)

Under the 2013 Guidelines in effect at the time of Defendant's sentencing, the dangerous weapon enhancement applied "[i]f a dangerous weapon (including a firearm) was possessed[.]" U.S.S.G. § 2D1.1(b)(1). The commentary to these guidelines explained:

> The enhancement should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's resident, had an unloaded hunting rifle in the closet. . . .

Application Note 11 to U.S.S.G. § 2D1.1.

As Defendant recognizes, the Government had the burden of showing, by a preponderance of the evidence, that Defendant "actually or constructively" possessed a firearm. *Penaloza*, 848 F. App'x at 518 (quoting *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir.

8

2003)). "Upon such proof, 'a presumption arises that "the weapon was connected to the offense,"' and '[t]he burden then shifts to the defendant to "show that it was clearly improbable that the weapon was connected with the crime."'" *Id.*

The PIR asserts the following facts regarding Defendant's possession of a firearm:

> On February 19, 2007, Francisco Martinez, Jr. and another HLK member possessed an HLK dues ledger, a .38 caliber Colt Super pistol, a 9mm Luger pistol, a .25 caliber ANC pistol (two of the firearms were wrapped in a black and gold bandana), multiple boxes of ammunition, $1,069 in United States currency, 29 grams of marijuana, 19 grams of cocaine base, digital scales, and baggies. These items were in a home that Francisco Martinez, Jr. and another HLK member shared on West 28th Street, Holland, Michigan.
>
> * * *
>
> On July 28, 2009, an HLK Future and Francisco Martinez, Jr., possessed a .25 caliber semiautomatic pistol near the intersection of Burke and 136th Streets, in Holland, Michigan.
>
> * * *
>
> On July 19, 2012, Francisco Martinez, Jr. possessed the following items at his home on Burke Avenue, Holland, Michigan: a Remington Model 7400, 30.06 caliber, semiautomatic rifle; numerous articles of clothing bearing HLK symbols and writings; marijuana manufacturing and packaging materials; and three marijuana plants growing in the back yard, with a hose leading from the home to the plants.

(Final PIR ¶¶ 185, 231, 339.)

Defendant does not dispute any of these facts. They are sufficient to show that he actually or constructively possessed up to five firearms during the course of the marijuana conspiracy. Defendant refers to only one of these five firearms, ostensibly the semiautomatic rifle that he possessed on July 19, 2012. But any of the other four firearms might have supported the enhancement as well. Thus, even if Defendant could make a sufficient showing as to the one firearm, he would have to deal with the other four. He has not even alleged, let alone demonstrated, that it was "clearly improbable" that none of the other four firearms were connected to the drug conspiracy. Consequently, he has not shown that counsel had a reasonable basis for objecting to the

9

firearm enhancement, or that the outcome of the proceedings would have been different if counsel had done so. In other words, Defendant's claim that counsel should have raised this objection does not satisfy the *Strickland* standard.

*Ground Two:* **Ineffective Assistance of Counsel: Failure to Object to the Enhancement for Threat or Use of Force**

Defendant also contends that his attorney should have objected to the enhancements in U.S.S.G. §§ 2A2.2(b)(3)(C) and 2D1.1(b)(2). Section 2A2.2 sets forth guidelines for aggravated assault. Section 2A2.2(b)(3)(C) provides a seven-level enhancement where the victim of an aggravated assault sustained "Permanent or Life-Threatening Bodily Injury." *Id.* The PIR used the latter enhancement when determining the offense level for the conspiracy to assault Davon Ruff.

Section 2D1.1(b)(2) provides for an enhancement of two levels for drug offenses where "the defendant used violence, made a credible threat to use violence, or directed the use of violence[.]" U.S.S.G. § 2D1.1(b)(2) (2013). The PIR used this enhancement when scoring the drug conspiracy, because Defendant allegedly issued the SOS order on Ruff because Ruff stole drugs belonging to the HLK.

Defendant contends that the Court impermissibly double-counted his conduct when applying both § 2A2.2(b)(3)(C) and § 2D1.1(b)(2), and that his attorney should have raised this issue. Defendant asserts that both enhancements involved the assault on Ruff. He apparently contends that he should not have received an enhancement for his threat (i.e., the SOS order) as well as the results of that threat (Ruff's injuries). In addition, he contends that the fact that the assault on Ruff was scored independently as an assault is sufficient to account for the "violence" that occurred in connection with the drug conspiracy.

Defendant's ineffective-assistance claim is meritless because his objections are meritless. The Court did not engage in impermissible double-counting. "It is well established that

10

'impermissible "double counting" occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.'" *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017) (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999)). Conversely, "a court may impose two enhancements arising from the same conduct, provided the enhancements 'penalize distinct aspects of [a defendant's] conduct and distinct harms[.]" *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (quoting *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008)). Moreover, double counting is allowed "'where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct.'" *Duke*, 870 F.3d at 404 (quoting *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (quoting *Farrow*, 198 F.3d at 194)).

In this case, the Court considered different aspects of Defendant's conduct when enhancing the offense level for Defendant's threat to use violence under § 2D1.1(b)(2), and for the result of that threat (i.e., permanent or life-threatening bodily injury) under § 2A2.2(b)(3)(C). Indeed, not all threats of violence result in permanent or life-threatening bodily injury. In other words, giving a SOS order is distinct from its result; both of these aspects of Defendant's conduct can give rise to enhancements under the Guidelines without impermissible double-counting.

Moreover, it was not error for the Court to use Defendant's SOS order in two contexts: once when analyzing the conspiracy to engage in aggravated assault, and again when analyzing his involvement in the drug conspiracy. In the first instance, the Court was taking into account the dangerous nature of Defendant's actions and its results (a violent assault on an individual), and in the second instance, the Court was taking into account the purpose of the SOS order, which was to further a drug conspiracy. Defendant did not issue the SOS order simply because he did not like Ruff; he did so because Ruff took drugs that belonged to the HLK. In other words, Defendant promoted the use of violence by the HLK for the purpose of enforcing its illegal

11

drug trade. Thus, although the Court used the enhancements under § 2A2.2(b)(3)(C) and § 2D1.1(b)(2) based on the same conduct by Defendant, these enhancements were focused on different aspects of that conduct, with distinct harms. Defendant's counsel was not ineffective for failing to raise a meritless objection.

Furthermore, as the Government points out, Defendant cannot show prejudice because the PIR describes more than one instance in which Defendant used violence on behalf of the HLK. For example, paragraph 230 of the Final PIR describes an instance in which Defendant assaulted a suspected police cooperator. Defendant contends that this assault had nothing to do with the drug conspiracy; however, it occurred during the same time period that Defendant was actively involved in an organization whose purpose was to distribute drugs, and one of the participants in the assault was another HLK member. Defendant offers no support for his contention that the assault was not drug-related. Thus, even if Defendant could show that the Court improperly double-counted the assault on Ruff, he cannot show that his sentence would have been different because the Court could have applied the use-of-violence enhancement in § 2D1.1(B)(2) and the permanent-or-life-threatening injury enhancement in § 2A2.2(b)(3)(C) using two completely different incidents. In short, a double-counting objection could not have changed the outcome of the proceedings.

Accordingly, Defendant's claims in Ground One and Ground Two of the motion under § 2255 are meritless.

### IV. Motion to Amend

Defendant has filed a motion to amend Ground One based on a recent case by the Court of Appeals for the Sixth Circuit, *United States v. Jackson*, 877 F.3d 231 (6th Cir. 2017). A motion to amend a motion under § 2255 is governed by Rule 15 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2242 ¶ 3 (explaining that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil

actions"); *Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir. 1978) ("Amendment of a petition for habeas corpus is governed by 'the rules of procedure applicable to civil actions.'") (quoting 28 U.S.C. § 2242). Rule 15(a) permits amendment of a pleading with leave of the Court "when justice so requires[.]" Fed. R. Civ. P. 15(a)(2). Defendant's motion will be denied because amendment would be futile. It would not change the disposition of his motion. *See Oleson v. United States*, 27 F. App'x 566, 570 (6th Cir. 2001) (affirming denial of motion to amend because amendment would be futile).

In *Jackson*, the court of appeals determined whether it was appropriate to apply the enhancement in U.S.S.G. § 2K2.1(b)(6)(B), which adds four levels for "us[ing] or possess[ing] a firearm in connection with another felony offense[.]" *Jackson*, 877 F.3d at 235. The defendant in *Jackson* pleaded guilty to being a felon in possession of a firearm and to two counts of distribution of heroin. *Id.* Among other things, the defendant sold a gun in close proximity to the sale of a small amount of drugs. The court of appeals discussed several different ways in which the defendant's possession and sale of the gun might be connected to his drug offense and concluded that none of them applied. *Id.* at 243.

*Jackson* does not apply to this case because *Jackson* concerns a different provision of the Guidelines with distinctly different wording. Defendant Martinez received an enhancement under U.S.S.G. § 2D1.1 that applies if a firearm "was possessed." Unlike U.S.S.G. § 2K2.1(b)(6)(B), the enhancement in § 2D1.1 does not contain the additional requirement that the firearm was possessed "in connection with another felony offense." In *Jackson*, the court of appeals determined how to interpret and apply the "connection" requirement in § 2K2.1(b)(6)(B), which simply does not exist in § 2D1.1. Thus, the analysis in *Jackson* is wholly inapposite.

Moreover, as in his motion under § 2255, Defendant's motion to amend focuses solely on one of the guns that were discovered in his possession. He does not address the others

13

that could have been used to support the enhancement in § 2D1.1. Accordingly, for all the foregoing reasons, the motion to amend his motion under § 2255 will be denied because amendment would be futile.

### V. Conclusion

For the reasons stated, Defendant's claims are meritless. Moreover, an evidentiary hearing is not required because the record of the case conclusively shows that Defendant is not entitled to relief. Consequently, Defendant's motion to amend and motion under § 2255 will be denied.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues in this matter and finds that reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong.

An order will enter consistent with this Opinion.

Dated: January 23, 2019 /s/ Janet T. Neff
Janet T. Neff
United States District Judge

14